UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

S. Y.,

       Plaintiff,

v.                              Case No: 2:20-cv-632-JES-MRM

WYNDHAM HOTELS & RESORTS,
INC., LA QUINTA HOLDINGS,
INC., LA QUINTA PROPERTIES,
INC., COREPOINT LODGING,
INC., CPLG LLC, and LQ FL
PROPERTIES, LLC, name
change CPLG FL Properties,
LLC,

       Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of the following motions: (1) defendants Wyndham Hotels & Resorts, Inc. and La Quinta Holdings Inc.'s Motion to Dismiss (Doc. #16), filed on September 30, 2020, and (2) defendants CorePoint Lodging, Inc., CPLG L.L.C., and CPLG FL Properties L.L.C.'s Motion to Dismiss (Doc. #17), filed on September 30, 2020.  Plaintiff filed an Opposition to each motion (Doc. #36; Doc. #37) on November 4th, 2020, to which defendants filed a Reply (Doc. #44; Doc. #45) on November 30, 2020.  For the reasons set forth below, the motions are denied.

**I.**

The origins of this case began on October 30, 2019, when plaintiff and another alleged victim of sex trafficking filed a case in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida.  See S.Y. et al v. Naples Hotel Co. et al, Case No. 2:20-cv-118 (Doc. #1, p. 3).  On December 31, 2019, the plaintiffs filed a First Amended Complaint which asserted ten claims against over forty defendants.  Id. at (Doc. #1, pp. 2-4).  The case was removed to federal court in February 2020.  Id. at (Doc. #1).   On April 15, 2020, the plaintiffs filed a Second Amended Complaint.  Id. at (Doc. #85).  On August 5, 2020, the undersigned denied various motions to dismiss, but determined severance of the parties was appropriate.  S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1258-59 (M.D. Fla. 2020).  Following the Court's severance order, plaintiff and the other alleged victim filed nearly thirty new actions against various defendants, including this case.

The Complaint (Doc. #1) in this case was filed on August 19, 2020, and alleges that plaintiff S.Y., a resident of Collier County, Florida, was a victim of continuous sex trafficking at a certain La Quinta Inn & Suites by Wyndham Naples Downtown in Naples, Florida (the La Quinta Hotel) between 2013 and February 2016.  (Id. ¶¶ 2, 13, 22-24.)  The Complaint alleges that during this time period the La Quinta Hotel was operated by defendants La

Quinta Holdings Inc., La Quinta Properties, Inc., CorePoint Lodging, Inc., CPLG L.L.C., and CPLG FL Properties L.L.C. as a franchisee of defendant Wyndham Hotels & Resorts, Inc. (Wyndham). (Id. ¶¶ 25-32, 53.)

The Complaint alleges the following six claims: (1) violation of the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 18 U.S.C. § 1595; (2) violation of the Florida RICO statute, § 772.104, Florida Statutes; (3) premise liability; (4) negligent hiring, supervision, and retention; (5) negligent rescue; and (6) aiding and abetting, harboring, confining, coercion, and criminal enterprise. (Id. pp. 35-54.) Counts One through Four are asserted against each defendant, while Counts Five and Six are asserted against all the defendants except Wyndham. (Id.)

## II.

The motions raise numerous arguments as to why the Complaint as whole, and each individual claim, should be dismissed. The Court will address each of these arguments in turn.

### A. Shotgun Pleading

The Complaint identifies the defendants collectively as the "La Quinta Downtown Defendants." (Doc. #1, p. 1 introductory paragraph.) Both motions argue that because the Complaint groups

the defendants together, it should be dismissed as a shotgun pleading.  (Doc. #16, pp. 4-5; Doc. #17, pp. 4-5.)[1]

One way in which a complaint may constitute an impermissible shotgun pleading is if it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015); see also Barmapov v. Amuial, 2021 WL 359632, *2 (11th Cir. Feb. 3, 2021). Such a pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," Weiland, 792 F.3d at 1323, and  violates the requirement that a plaintiff provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2).

The Complaint does indeed repeatedly refer to the defendants collectively as the "La Quinta Downtown Defendants."  The failure to specify a particular defendant is not fatal, however, when "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000).  The Complaint typically (but not

---

[1] The page numbers refer to those generated by the Court's computer system upon filing (upper left-hand corner) and do not always correspond with the page number at the bottom of the document.

always) alleges that "each and every" such defendant was involved in the activity described in the particular paragraph of the Complaint.  A fair reading of the Complaint is that each of these defendants was involved in the identified conduct attributed to the "La Quinta Downtown Defendants."  While the defendants may disagree that such allegations are accurate, that dispute is for another day.  The group allegations do not fail to state a claim, Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co., 953 F.3d 707, 732-33 (11th Cir. 2020), and the Complaint does not constitute a shotgun pleading.

**B. Failure to State a Claim**

Each motion argues certain claims should be dismissed due to plaintiff's failure to state a claim upon which relief may be granted.  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level."  Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

**(1) Trafficking Victims Protection Reauthorization Act**

Both motions challenge the one federal claim, the alleged violation of the TVPRA set forth in Count One. The TVPRA provides a civil remedy to victims of certain types of human trafficking. The civil remedy portion of the Act provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  The phrase "a violation of this chapter" refers to Chapter 77 of Title 18 of the United States Code.  The only violation of Chapter 77 relevant to this case is contained in 18 U.S.C. § 1591(a), which provides in relevant part:

> (a)  Whoever knowingly –
>
> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).  To state a section 1595(a) claim in this case, plaintiff must plausibly allege that she was a victim of a criminal offense under section 1591(a), and then must plausibly allege that defendant (1)"knowingly benefit[ted] financially or by

receiving anything of value," (2) from participation in a venture, (3) which defendant "knew or should have known has engaged in" sex trafficking under section 1591(a).  S.Y., 476 F. Supp. 3d at 1255-56 (citing A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).

The motions argue the Complaint's allegations are insufficient to state a claim under section 1595(a), asserting three pleading deficiencies.  (Doc. #16, pp. 6-12; Doc. #17, pp. 6-12.)

### (a)  "Participation" in a "Venture"

The motions first argue that the Complaint lacks well-pled allegations that the defendants participated in a "venture," as required by section 1595(a).  (Doc. #16, pp. 6-9; Doc. #17, pp. 6-10.)  Drawing on the definition of "venture" used in the criminal portion of the statute, 18 U.S.C. § 1591(e)(6)[2], the motions assert that a "venture" requires two or more individuals "associated in fact."[3]  (Doc. #16, p. 6; Doc. #17, p. 6.)  Borrowing from the

---

[2]  "The term 'venture' means any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6).

[3] The motions note that the defendants are not seeking to impute the definition of "participation in a venture" from the criminal provision in section 1591(e)(4), but suggesting that the Court should apply the definition of "venture" for section 1591(e)(6) and the ordinary meaning of the term as construed by at least two appellate courts.  (Doc. #16, p. 9 n.4; Doc. #17, p. 9 n.4.)

federal RICO definition of "enterprise," the motions argue that "associated in fact" requires that persons must operate as a "continuing unit that functions with a common purpose." (Doc. #16, p. 6; Doc. #17, pp. 6-7.) The motions continue that in the context of a TVPRA claim against a hotel operator, the Complaint must "at least" allege a "continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." (Doc. #16, p. 7; Doc. #17, p. 7.) (quoting M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)); see also Doe v. Rickey Patel, LLC, 2020 WL 6121939, *5 (S.D. Fla. Sept. 30, 2020)( "In order to plead Defendants participated in a venture, Plaintiff must allege facts from which the Court could reasonably infer the hotels could be said to have a tacit agreement with the trafficker." (marks omitted)). The motions conclude that "[a] commercial relationship, such as a hotel owner renting a hotel room, does not give rise to a reasonable inference that the participants in such a relationship shared a common purpose or otherwise 'associated in fact.'" (Doc. #16, p. 7; Doc. #17, p. 7.)

Here, the Complaint alleges the defendants participated in a venture "by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the

traffickers' sale and victimization of the Plaintiff S.Y. for commercial sexual exploitation by repeatedly renting rooms at La Quinta Downtown Hotel to people" the defendants "knew or should have known were engaged in sex trafficking."  (Doc. #1, ¶ 164.)[4] The Complaint also alleges why the defendants should have been on notice of the sex trafficking and how they failed to prevent it. (Id. ¶¶ 4-16, 59-87, 118.)  The Court finds the allegations in the Complaint sufficient to allege participation in a venture under section 1595(a).  See Doe, 2020 WL 6121939, *5 ("The Court finds it sufficient for Plaintiff to plead that Defendants participated in a venture by renting rooms to individuals that knew or should have known were involved in a sex-trafficking venture, including the sex-trafficking victim."); M.A., 425 F. Supp. 3d at 971 ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known where [sic] engaged in sex trafficking.").

The motions also argue that "participation" in a venture requires an allegation of an overt act in furtherance of the venture, and that failure to prevent sex trafficking is not such an overt act.  (Doc. #16, p. 8; Doc. #17, p. 8.)  The Court is not

---

[4] The motions cite the same paragraph, but fail to recite the complete sentence.  (Doc. #16, p. 8; Doc. #17, pp. 8-9.)

convinced.  S.Y., 476 F. Supp. 3d at 1256 ("In the absence of any controlling authority, the Court concludes that actual 'participation in the sex trafficking act itself' is not required to state a claim under section 1595.  Accordingly, plaintiffs' failure to allege such actual participation is not fatal to its section 1595 claim under the TVPRA.").  The defendants have not identified any controlling authority to the contrary.

(b)  **Knowingly Benefited From Participating in Venture**

The motions next argue that the Complaint insufficiently alleges that the defendants knowingly benefitted *from* participating in a venture that committed TVPRA crimes, with knowledge of the causal relationship.  (Doc. #16, p. 10; Doc. #17, p. 10.)  The motions assert that the allegation that the defendants financially benefited from the operation of the La Quinta Hotel is insufficient.  (Doc. #16, p. 10; Doc. #17, p. 10.)

The Complaint alleges the defendants knowingly benefited from the sex trafficking of plaintiff "by receiving payment for the rooms rented for Plaintiff S.Y. and her traffickers at the La Quinta Downtown Hotel," and by receiving "other financial benefits in the form of food and beverage sales and ATM fees from those persons who were engaging in sex trafficking."  (Doc. #1, ¶ 162.)  As to Wyndham as franchisor, the Complaint alleges it "received a significant franchise fee and continuous royalties on the La Quinta Downtown Hotel's gross revenue," while also exercising "ongoing

and systematic control over operations at the La Quinta Downtown Hotel." (Id. ¶¶ 47, 115.)   The Court finds such allegations sufficient to satisfy the "knowingly benefitted" element.   S.Y., 476 F. Supp. 3d at 1257; Doe S.W. v. Lorain-Elyria Motel, Inc., 2020 WL 1244192, *5 (S.D. Ohio Mar. 16, 2020); H.H. v. G6 Hosp., LLC, 2019 WL 6682152, *2 (S.D. Ohio Dec. 6, 2019); M.A., 425 F. Supp. 3d at 965.

### (c) Knew or Should Have Known that Venture was Committing Sex Trafficking Crimes

The motions argue the Complaint fails to plausibly allege that the defendants knew or should have known that the "venture" was engaging in sex-trafficking crimes, i.e., that the defendants knew or should have known that an adult plaintiff was caused to engage in commercial sex by force, threats of force, fraud, or coercion.   (Doc. #16, pp. 10-12; Doc. #17, pp. 10-12.)   Rather, the motions argue, the Complaint only alleges that the hotel staff did not interfere with plaintiff and witnessed indicia of commercial sex activity.   (Doc. #16, p. 10; Doc. #17, pp. 10-11.) The motions argue that the allegations do not give rise to a reasonable inference that the defendants knew or should have known about any commercial sex activity at the La Quinta Hotel, let alone that it was forced activity.   (Doc. #16, p. 11; Doc. #17, p. 11.)

The Court disagrees with this argument.   First of all, "knowledge, and other conditions of a person's mind may be alleged

generally." Fed. R. Civ. P. 9(b); see Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1215 (11th Cir. 2018). Pleading "generally" is not without limits, and a complaint must still comply with "the less rigid—though still operative—strictures of Rule 8." Iqbal, 556 U.S. at 686–87. The Complaint clearly satisfies this notice pleading standard.

Plaintiff has alleged that the following was "routine conduct taking place at the La Quinta Downtown Hotel as a result of the human sex trafficking enterprise":

    a. Plaintiff's sex traffickers frequently rented rooms at the hotel close to each other and near the exit;

    b. Plaintiffs' [sic] sex traffickers often paid cash for the rooms at the La Quinta Downtown Hotel where the Plaintiff engaged in commercial sex acts;

    c. Plaintiff's sex traffickers booked extended stays at the La Quinta Downtown Hotel for themselves and for the Plaintiff on a routine basis and on a rotating basis frequently throughout the year;

    d. Plaintiff and her sex traffickers would have few or no luggage or personal possessions for these extended stays;

    e. Plaintiff was confined in the rooms at the La Quinta Downtown Hotel for long periods of time;

    f. Plaintiff's rooms and her sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in sex trafficking acts;

    g. Men ("Johns") frequently entered and left the rooms at the La Quinta Downtown Hotel where the Plaintiff was engaged in illegal sex trafficking acts at all times of day and night;

> h. The staff and customers at the La Quinta Downtown Hotel that was owned, operated, managed, supervised, controlled and/or otherwise held responsible by each and every La Quinta Downtown Defendant saw that the rooms where the Plaintiff engaged in commercial sex acts were messy, and contained sex and drug paraphernalia, blood-stained linens and had an unclean smell;
>
> i. The rooms at the La Quinta Downtown Hotel were filled with evidence of sex trafficking and drug use;
>
> j. Plaintiff's sex traffickers consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and the Plaintiff's rooms;
>
> k. Plaintiff and other sex trafficking victims would frequently request clean towels and linens;
>
> l. Plaintiff dressed in a sexually explicit manner and would walk seen by the hotel staff in the hallways of the La Quinta Downtown Defendant [sic];
>
> m. Excessively loud noises would consistently come from Plaintiff's rooms;
>
> n. During nighttime hours, Plaintiff and her "Johns" would create noise at the La Quinta Downtown Hotel and, upon information and belief, would be a disturbance to other guests using the hotel for their intended purposes; and
>
> o. While at the hotel, the Plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire.

(Doc. #1, ¶ 100.)   Further, the Complaint alleges the defendants "knew or should have known about the nature of the sex trafficking venture at the La Quinta Downtown Hotel, including as they related to Plaintiff S.Y." due to the following:

> a. Requests by the traffickers to rent rooms near exit doors;

b. Cash payments for the rooms by the sex traffickers;

c. Refusal of housekeeping services by those persons engaged in sex trafficking;

d. Excessive used condoms located in the rooms used for sex trafficking;

e. Excessive requests for towels and linens in the rooms used for sex trafficking;

f. Hotel staff observing Plaintiff S.Y. and her traffickers in the hotel;

g. Plaintiff S.Y. being escorted by traffickers in and around the hotel;

h. Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession;

i. Multiple men per day coming and going from the same rooms without luggage or personal possessions;

j. Hotel staff observing Plaintiff S.Y. in inappropriate clothing, often in the same dirty clothing for extended periods of time; and

k. Knowledge of police and EMS activity at the La Quinta Downtown Hotel and at other locations near the La Quinta Downtown Hotel that was related to commercial sex work.

(Id. ¶ 163.)

The Court finds these allegations sufficient to reasonably infer the defendants knew or should have known of the sex trafficking venture. S.Y., 476 F. Supp. 3d at 1257; A.B., 455 F. Supp. 3d at 193-94; Doe S.W., 2020 WL 1244192, *5-6; H.H., 2019 WL 6682152, *3; M.A., 425 F. Supp 3d at 967-68.

Because the allegations in the Complaint are sufficient to state a claim under section 1595 of the TVPRA, the Court denies the request for dismissal pursuant to Rule 12(b)(6).

**(2)  Florida RICO Violation**

Count Two of the Complaint asserts a claim against the defendants under Florida's civil RICO statute, section 772.104, Florida Statutes.  (Doc. #1, p. 37.)  To state a claim under the statute, plaintiff must allege plausible facts showing "(1) conduct or participation in an enterprise through (2) a pattern of [criminal] activity."  Horace-Manasse v. Wells Fargo Bank, N.A., 521 Fed. App'x 782, 784 (11th Cir. 2013) (quoting Lugo v. State, 845 So. 2d 74, 97 (Fla. 2003)).[5]

Each of the motions argue plaintiff has insufficiently pled the enterprise element of her claim.  (Doc. #16, pp. 12-14; Doc. #17, pp. 13-14.)  Florida's RICO statute defines enterprise to include a "group of individuals associated in fact although not a legal entity."  § 772.102(3), Fla. Stat.  "[A]n association-in-fact enterprise is simply a continuing unit that functions with a

---

[5] "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in interpreting and applying the act.  Therefore, federal decisions should be accorded great weight." O'Malley v. St. Thomas Univ., Inc., 599 So. 2d 999, 1000 (Fla. 3d DCA 1992); see also Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d 1124, 1137 (M.D. Fla. 2018) ("[T]he Eleventh Circuit applies federal RICO analysis equally to Florida RICO claims.").

common purpose." Boyle v. United States, 556 U.S. 938, 948 (2009). To sufficiently plead such an enterprise, "a plaintiff must allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020) (marks and citations omitted). The motions argue the Complaint fails to sufficiently allege a "common purpose" among the defendants. (Doc. #16, p. 14; Doc. #17, p. 14.)

"The purpose prong contemplates 'a common purpose of engaging in a course of conduct' among the enterprise's alleged participants." Cisneros, 972 F.3d at 1211 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). "An abstract common purpose, such as a generally shared interest in making money, will not suffice. Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." Id. (citations omitted).

Here, the Complaint alleges the defendants "associated with each other and/or the Plaintiff S.Y.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme." (Doc. #1, ¶ 173.) Plaintiff asserts this "association-

in-fact" constitutes an "enterprise" under Florida's RICO statute, and that the defendants conducted or participated in their enterprises through a pattern of criminal activity, "related by their common purpose to profit off an institutionalized sex trafficking scheme." (Id. ¶¶ 173-74.) The Court finds these allegations sufficient to allege the defendants "shared the purpose of enriching themselves through a particular criminal course of conduct." Cisneros, 972 F.3d at 1211; see also United States v. Church, 955 F.2d 688, 697-98 (11th Cir. 1992) (noting that "an association's devotion to 'making money from repeated criminal activity' . . . demonstrates an enterprise's 'common purpose of engaging in a course of conduct'" (citations omitted)); Burgese v. Starwood Hotel & Resorts Worldwide, Inc., 101 F. Supp. 3d 414, 424 (D. N.J. 2015) (on motion to dismiss Florida RICO claim, court found that "Plaintiff's Amended Complaint can be read to allege a 'common purpose' of furthering an institutionalized prostitution scheme to increase profits for the participants," and that "[t]hese allegations, though thin, are sufficient for purposes of this motion").

Each of the motions also argues the Complaint fails to sufficiently plead the "pattern of criminal activity" element. (Doc. #16, pp. 14-15; Doc. #17, pp. 14-15.) As previously stated, "[i]n order to state a civil cause of action under the Florida RICO Act, a plaintiff must allege a pattern of criminal activity."

<u>Arthur v. JP Morgan Chase Bank, NA</u>, 569 Fed. App'x 669, 682 (11th Cir. 2014) (citing §§ 772.103-104, Fla. Stat.).  The statute's definition of "criminal activity" provides "that a particular state law crime can serve as the predicate act for a RICO claim if it is 'chargeable by indictment or information' and falls within a series of specified provisions."  <u>Id.</u> (citing § 772.102(1)(a), Fla. Stat.).  "In order to establish a pattern of criminal activity, the plaintiff must allege two or more criminal acts 'that have the same or similar intents, results, accomplices, victims, or methods of commission' that occurred within a five-year time span."  <u>Id.</u> at 680 (citing § 772.102(4), Fla. Stat.).

As noted in the motions (Doc. #16, p. 14; Doc. #17, pp. 14-15), plaintiff's Florida RICO claim is predicated on the commission of human trafficking crimes in violation of section 787.06, Florida Statutes.  (Doc. #1, ¶¶ 175, 177); <u>see also</u> § 772.102(1)(a)15., Fla. Stat. (listing "human trafficking" under Chapter 787 among the types of "criminal activity" covered by the Florida RICO statute).  This provision provides various punishments for "[a]ny person who knowingly, or in reckless disregard of the facts, engages in human trafficking, or attempts to engage in human trafficking, or benefits financially by receiving anything of value from participation in a venture that has subjected a person to human trafficking."  § 787.06(3), Fla. Stat.  Given the similarity between this language and the TVPRA's civil liability

19

provision, the motions argue the Florida RICO claim fails "for the same reasons that Plaintiff failed to state a TVPRA claim." (Doc. #16, p. 15; Doc. #17, p. 15.)  The Court has, however, determined plaintiff's TVPRA claim is sufficiently pled, and therefore rejects the motions' argument as to the Florida RICO claim.

**(3)  Premise Liability**

Count Three of the Complaint asserts a claim of premise liability against each defendant.  (Doc. #1, p. 40.)  A premise liability claim is a form of negligence action.  "The elements for negligence are duty, breach, harm, and proximate cause; the additional elements for a claim of premises liability include the defendant's possession or control of the premises and notice of the dangerous condition." Lisanti v. City of Port Richey, 787 So. 2d 36, 37 (Fla. 2d DCA 2001).  Plaintiff alleges the defendants owed her a variety of duties, that they breached these duties, and that as a direct and proximate result, she suffered bodily injury. (Doc. #1, ¶¶ 193-207.)  Plaintiff also alleges the defendants had actual or constructive knowledge of sex trafficking occurring on the premises, that they knew or should have known the risk of such criminal conduct taking place would be unreasonably high without appropriate precautions, and that they had actual or constructive knowledge of the dangerous conditions plaintiff was in.  (Id. ¶¶ 198-200.)

### (a)   Statute of Limitations

The motions argue the premise liability claim should be dismissed because it is barred by the relevant statute of limitations.  (Doc. #16, pp. 18-19; Doc. #17, p. 19.)  Under Florida law, the statute of limitations for negligence claims is four years.  § 95.11(3)(a), Fla. Stat.

A statute of limitations bar is "an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint."  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted).  "A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred."  United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018) (marks and citation omitted).

Plaintiff alleges the sex trafficking occurred at the La Quinta Hotel "[f]rom approximately 2013 to 2014," and "[t]hen from approximately 2015 to February 2016."  (Doc. #1, ¶ 88.)  The motions argue that because the Complaint was filed in August 2020, the premise liability claim is time barred.  (Doc. #16, p. 19; Doc. #17, p. 19.)

"Under Florida law, the statute of limitations begins to run when the cause of action accrues."  Carnival Corp. v. Rolls-Royce PLC, 2009 WL 3861482, *5 (S.D. Fla. Nov. 17, 2009) (citing §

21

95.031, Fla. Stat.). "A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. "Under the continuing tort doctrine, the cause of action accrues when the tortious conduct ceases." Effs v. Sony Pictures Home Entm't, Inc., 197 So. 3d 1243, 1244 (Fla. 3d DCA 2016) (emphasis and citation omitted). "A continuing tort is established by continual tortious acts, not by continual harmful effects from an original, completed act." Id. at 1245 (marks, emphasis, and citation omitted).

Here, plaintiff alleges she was a repeat victim of sex trafficking at the La Quinta Hotel between 2013 and 2014, and then between 2015 and February 2016. The Court finds such allegations sufficient to invoke the continuing tort doctrine. See Nat'l Sourcing, Inc. v. Bracciale, 2018 WL 6172430, *2 (M.D. Fla. Nov. 26, 2018) (finding allegation that a defendant's actions "continued to this day" inferred continuous tortious conduct, thereby making it plausible for the plaintiffs to assert the continuing tort doctrine as a basis to toll the statute of limitations). Accordingly, the Court finds that plaintiff's premise liability claim did not accrue until February 2016, and therefore she had until February 2020 to file a complaint asserting premises liability.

Plaintiff met this deadline by filing her First Amended Complaint against Wyndham on December 31, 2019. S.Y. et al v.

Naples Hotel Co. et al, Case No. 2:20-cv-118 (Doc. #3).  While the Court determined severance of the parties was appropriate in the original action, S.Y., 476 F. Supp. 3d at 1259, and this Complaint was filed in August 2020, it appears that the December 2019 date is applicable for statute of limitations purposes under the relation-back provisions of Rule 15(c) of the Federal Rules of Civil Procedure.

> Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision. See McCurdy v. United States, 264 U.S. 484, 487, 44 S.Ct. 345, 346, 68 L.Ed. 801 (1924); Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993). Under Rule 15, a claim in an amended complaint relates back to the filing date of the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When the facts in the original complaint do not put the defendant "on notice that the new claims of negligence might be asserted," but the new claims instead "involve[ ] separate and distinct conduct," such that the plaintiff would have to prove "completely different facts" than required to recover on the claims in the original complaint, the new claims do not relate back. Moore, 989 F.2d at 1132.

Caron v. NCL (Bahamas), Ltd., 910 F.3d 1359, 1368 (11th Cir. 2018). Accordingly, since it is not apparent from the face of the Complaint that the claim is time-barred, dismissal based upon the statute of limitations affirmative defense is not appropriate.

For the same reasons, the Court rejects the motions' argument that the negligent hiring, supervision, and retention claim, negligent rescue claim, and aiding and abetting, harboring,

confining, coercion, and criminal enterprise claim are also barred by the four-year statute of limitations. (Doc. #16, pp. 18-19; Doc. #17, p. 19.)

### (b)  Failure to State a Claim

The motions argue the premise liability claim is insufficiently pled, first asserting that the claim fails because it does not allege the defendants possessed or controlled the La Quinta Hotel. (Doc. #16, p. 15; Doc. #17, pp. 15-16.)  The Court disagrees.  As noted, a premise liability claim requires a defendant possess or control the premises at issue. Lisanti, 787 So. 2d at 37.  Here, the Complaint alleges the defendants were the "owners, operators, managers, supervisors, controllers and innkeepers" of the La Quinta Hotel, and that Wyndham exercised control over the means and methods of how  the other defendants conducted business at the hotel. (Doc. #1, ¶¶ 32, 116.)  While the defendants may dispute these allegations, the Court must accept them as true at this stage of the proceedings and finds them sufficient to allege the defendants had sufficient control of the La Quinta Hotel for premise liability purposes.

Next, the motions argue there could be no duty to protect plaintiff from the criminal conduct of third parties because such conduct was not foreseeable. (Doc. #16, pp. 15-16; Doc. #17, p. 16.)  The Court disagrees with this argument as well.

24

"Under Florida law, a business owes invitees a duty to use due care to maintain its premises in a reasonably safe condition. This includes the duty to protect customers from criminal attacks that are reasonably foreseeable." Banosmoreno v. Walgreen Co., 299 Fed. App'x 912, 913 (11th Cir. 2008) (citations omitted).

> Foreseeability can be shown by two alternative means. First, a plaintiff may demonstrate that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron. Second, a plaintiff can show that a proprietor knew or should have known of the dangerous propensities of a particular patron.

Id. (marks, citations, and footnote omitted). Such knowledge must only be pled generally. Fed. R. Civ. P. 9(b).

The Complaint contains sufficient allegations that sex trafficking was occurring at the La Quinta Hotel and that the defendants knew or should have known of it. (Doc. #1, ¶¶ 59-65, 100-109, 163.) The Complaint also contains sufficient allegations to support a claim of an agency relationship between Wyndham and the other defendants (id. ¶¶ 114, 116), and any factual challenge to such a relationship is premature. See Cain v. Shell Oil Co., 994 F. Supp. 2d 1251, 1252 (N.D. Fla. 2014) ("The determination of whether an agency relationship exists is generally a question of fact for the jury unless the sole basis for the alleged agency rests in the interpretation of a single contract in which case the determination may be a question of law to be determined by the

court.")[6]; <u>Mobil Oil Corp. v. Bransford</u>, 648 So. 2d 119, 120 (Fla. 1995) ("Franchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities."). Accordingly, the Court finds the allegations in the Complaint are sufficient to satisfy the notice pleading requirements.

Finally, the motions suggest the Complaint is lacking "any allegation supporting causation." (Doc. #16, p. 16; Doc. #17, p. 16.) The Court disagrees. The Complaint alleges the defendants were on notice of the sex trafficking occurring at the La Quinta

---

[6] Since the Complaint alleges an agency relationship based upon the interaction between Wyndham and the other defendants (Doc. #1, ¶ 116), this is a question of fact inappropriate to decide on a motion to dismiss. See <u>Banco Espirito Santo Int'l, Ltd. v. BDO Int'l, B.V.</u>, 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008) ("Unless the alleged agency relationship is to be proven exclusively by analysis of the contract between the principal and agent (in which case the question is an issue of law), the relationship is generally a question of fact and should be analyzed by looking at the totality of the circumstances."); see also <u>A.B. v. Hilton Worldwide Holdings Inc.</u>, 2020 WL 5371459, *10 (D. Or. Sept. 8, 2020) ("Defendants dispute whether they controlled the day-to-day operations of the hotels. Although Plaintiff may ultimately fail to establish the agency allegations, at this stage in the proceedings this Court accepts as true all well-pleaded factual allegations in the complaint and construes them in Plaintiff's favor."); <u>A.B.</u>, 455 F. Supp. 3d at 196 ("The evidence may ultimately prove Marriott does not exercise day-to-day control over its Philadelphia Airport hotels, but this is more properly raised after discovery.").

Hotel and not only failed to prevent it, but knowingly turned a blind eye to it in exchange for increased profits. (Doc. #1, ¶¶ 92, 260, 262.) The Complaint also alleges that as a result of the defendants' actions, plaintiff suffered various injuries and damages. The Court finds the Complaint sufficiently alleges proximate cause and, therefore, denies the motions' request to dismiss the claim as insufficiently pled.

### (4) Negligent Hiring, Supervision, and Retention

Count Four of the Complaint asserts a claim of negligent hiring, supervision, and retention against each defendant. (Doc. #1, p. 45.) "To state a claim under Florida law for negligent hiring, supervision and/or retention, a plaintiff must establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees." Clary v. Armor Corr. Health Servs., Inc., 2014 WL 505126, *4 (M.D. Fla. Feb. 7, 2014) (citations omitted). "Florida law also holds employers liable for reasonably foreseeable damages resulting from the negligent training of its employees and agents." Id. (citing Lewis v. City of St. Petersburg, 260 F.3d 1260, 1265 (11th Cir. 2001)). "For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer." Id. (citation omitted).

> Accordingly, to state a claim, the plaintiff must allege facts that would establish a nexus between the plaintiff and the tortfeasor's employment from which a legal duty

would flow from the defendant-employer to the plaintiff. The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage.

Id. (citations omitted).

The Complaint alleges each defendant was in control of the hiring, instructing, training, supervising, and terminating of the hotel employees, and that each defendant had a duty to make an appropriate investigation of the employees. (Doc. #1, ¶¶ 218-19.) The Complaint further alleges that the defendants knew or should have known that hotel employees were "allowing criminals to rent rooms for prostitution and drug dealing," "failing to either identify and/or report the human sex trafficking and foreseeable harm" of plaintiff, and "failing to refuse continued lodging services to human sex traffickers." (Id. ¶¶ 221-23.) The Complaint concludes that the defendants were negligent in their hiring, employment, supervision, and termination decisions regarding the employees, and that the sex trafficking of plaintiff was a foreseeable and direct result. (Id. ¶¶ 224-28.)

The motions seek dismissal of the negligent hiring, supervision, and retention claim based on pleading deficiencies, first arguing the Complaint lacks sufficient factual allegations the defendants knew or should have known of any unfit employees. (Doc. #16, p. 17; Doc. #17, p. 17); see also Bright v. City of Tampa, 2017 WL 5248450, *8 (M.D. Fla. May 17, 2017) ("When an

employer fails to take a corrective action against an employee because the employer had no notice of problems with the employee's fitness, the employer is not liable under Florida law for negligent supervision or retention."). The Court disagrees. The Complaint sufficiently alleges facts suggesting sex trafficking was occurring at the hotel, that the employees knew of it and failed to prevent it, and that due to their control over the employees, each defendant knew or should have known of it. (Doc. #1, ¶¶ 92-112, 215-223.) The Court finds such allegations sufficient at this stage of the proceedings.

The motions also argue the claim should be dismissed because the Complaint does not plausibly allege the defendants hired or employed any of the employees at issue. (Doc. #16, p. 17; Doc. #17, p. 17.) The Court is not persuaded, as the Complaint alleges "[e]ach and every" defendant "was in control of the hiring" of hotel employees, and that Wyndham "exercised control over the means and methods" of the hotel, including "[m]aking employment decisions." (Doc. #1, ¶¶ 116, 218.) The Court is required to accept all factual allegations as true, Erickson, 551 U.S. at 94, and "[i]n adjudicating a motion to dismiss, the district court may not resolve factual disputes." Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv., 493 Fed. App'x 994, 995 (11th Cir. 2012). Accordingly, the Court denies the request to dismiss the negligent hiring, supervision, and retention claim.

**(5)  Negligent Rescue**

Count Five of the Complaint asserts a claim of negligent rescue against each of the defendants except Wyndham.  (Doc. #1, p. 48.)  The Complaint alleges these defendants, as the owners and operators of the La Quinta Hotel, had a duty to keep the premises safe and prevent foreseeable criminal activity, as well as a duty "to make safe a dangerous condition at the La Quinta Downtown Hotel and to rescue their hotel guests, specifically Plaintiff S.Y., from the peril they created."  (Id. ¶¶ 235, 238, 244.)  The Complaint alleges that by various acts and omissions, these defendants breached these duties and that the continuous sex trafficking of plaintiff was the direct and foreseeable result. (Id. ¶¶ 240-42, 246-47, 249.)  The motions argue the negligent rescue claim should be dismissed because it is insufficiently pled. (Doc. #16, pp. 17-18; Doc. #17, p. 18.)

There is no common law duty to rescue a stranger.  Estate of Ferguson v. Mascara, 2010 WL 11558195, *2 (S.D. Fla. Sept. 7, 2010) (citing Bradberry v. Pinellas Cty., 789 F.2d 1513, 1516 (11th Cir. 1986)).  "A well-established exception to this rule, however, provides that an innkeeper is 'under an ordinary duty of care to [a guest] after he knows or has reason to know the [guest] is ill or injured."  De La Flor v. Ritz-Carlton Hotel Co., L.L.C, 2013 WL 148401, *3 (S.D. Fla. Jan. 14, 2013)  (quoting L.A. Fitness, Int'l, LLC v. Mayer, 980 So. 2d 550, 557 (Fla. 4th DCA 2008)); see also

Abramson v. Ritz Carlton Hotel Co., LLC, 480 Fed. App'x 158, 161 (3d Cir. 2012) ("Generally, there is no duty to affirmatively assist an injured person unless a special relationship, such as that between an innkeeper and its guests, exists between the parties." (citation omitted)).

The motions argue the negligent rescue claim should be dismissed because it is insufficiently pled under the "rescue doctrine." (Doc. #16, pp. 17-18; Doc. #17, p. 18.) Under Florida law, the rescue doctrine holds a tortfeasor liable for injuries to a third party who is hurt in attempting to rescue the direct victim of the tortfeasor. Zivojinovich v. Barner, 525 F.3d 1059, 1070 (11th Cir. 2008) (citation omitted). "The basic precept of this doctrine 'is that the person who has created a situation of peril for another will be held in law to have caused peril not only to the victim, but also to his rescuer, and thereby to have caused any injury suffered by the rescuer in the rescue attempt.'" Menendez v. W. Gables Rehab. Hosp., LLC, 123 So. 3d 1178, 1181 (Fla. 3d DCA 2013) (quoting N.H. Ins. Co. v. Oliver, 730 So. 2d 700, 702 (Fla. 4th DCA 1999)).

As plaintiff correctly argues in response (Doc. #36, p. 32; Doc. #37, pp. 31-32), the rescue doctrine is not implicated by plaintiff's negligent rescue claim. See Krajcsik v. Ramsey, 2017 WL 3868560, *2 n.4 (D. Md. Sept. 5, 2017) ("The rescue doctrine is related to, but separate from, the affirmative duty to rescue an

imperiled party that the courts impose on persons in some situations.").  Accordingly, because the rescue doctrine is not applicable, the motions' request for dismissal based on the doctrine is denied.[7]

**(6)  Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise**

Finally, Count Six of the Complaint asserts a claim of aiding and abetting against each of the defendants except Wyndham.  (Doc. #1, p. 52.)  The Complaint accuses these defendants of "aiding and abetting unlawful activity including unlawful confinement, imprisonment, assault and battery by [plaintiff's] sex traffickers and 'Johns.'"  (Id. ¶ 250.)  The motions argue the claim is overly vague and fails to articulate a cause of action.  (Doc. #16, p. 18; Doc. #17, p. 18.)  The Court disagrees.

Florida courts have recognized aiding and abetting the commission of a tort as a standalone claim.  See Gilison v. Flagler Bank, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020) (aiding and abetting fraud); MP, LLC v. Sterling Holding, LLC, 231 So. 3d 517, 527 (Fla. 3d DCA 2017) (aiding and abetting breach of fiduciary duty).  This

---

[7] The motions also suggest hotels only have a limited duty to render aid to a guest it knew or should have known was ill or injured, and that the Complaint contains no plausible facts to suggest the defendants knew plaintiff was in need of aid.  (Doc. #16, p. 18 n.5; Doc. #17, p. 18 n.5.)  However, the Court finds the Complaint contains sufficient allegations to satisfy this requirement.  (Doc. #1, ¶¶ 101, 102, 245.)

Court has previously listed the following elements that must be alleged "to state a claim for aiding and abetting a common law tort" under Florida law: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter [sic]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." Angell v. Allergan Sales, LLC, 2019 WL 3958262, *8 (M.D. Fla. Aug. 22, 2019); see also Lawrence v. Bank of Am., N.A., 455 Fed. App'x 904, 906 (11th Cir. 2012) (applying the above elements to three Florida tort claims). These cases demonstrate Florida recognizes a common-law claim of aiding and abetting tortious conduct.

Here, the Complaint alleges several of the defendants aided and abetted plaintiff's unlawful harboring, confinement, imprisonment, assault and battery, and to the extent the claim alleges these defendants had actual knowledge[8], the Court finds it sufficient to state a claim.[9] Accordingly, the Court denies the motions' request for dismissal.

-------

[8] "[A]llegations which demonstrate merely constructive knowledge, recklessness or gross negligence cannot satisfy the 'knowledge' element of an aiding and abetting claim under Florida law." Angell, 2019 WL 3958262, *9.

[9] To the extent the motions suggest the claim fails to allege sufficient facts to satisfy the "knowledge" and "substantial assistance" elements (Doc. #16, p. 18; Doc. #17, pp. 18-19), the

Accordingly, it is now

**ORDERED:**

1. Defendants Wyndham Hotels & Resorts, Inc. and La Quinta Holdings Inc.'s Motion to Dismiss (Doc. #16) is **DENIED.**

2. Defendants CorePoint Lodging, Inc., CPLG L.L.C., and CPLG FL Properties L.L.C.'s Motion to Dismiss (Doc. #17) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___26th___ day of February, 2021.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

---

Court finds the allegations in the Complaint sufficient. (Doc. #1, ¶¶ 92, 259-64.)